# NELSON BROTHERS FURNITURE CORPORATION, Petitioner-Appellant-Cross Respondent,

## v.

# Wisconsin DEPARTMENT OF REVENUE, Respondent-Cross Appellant.

Court of Appeals

*No. 88-1647. Submitted on briefs May 5, 1989.—Decided October 26, 1989.*

(Also reported in 449 N.W.2d 328.)

For the petitioner-appellant-cross respondent the cause was submitted on the briefs of *Foley & Lardner* by *Timothy C. Frautschi* of Madison.

For the respondent-cross appellant the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Edward S. Marion,* assistant attorney general, of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J. Nelson Brothers Furniture Corporation appeals from a judgment affirming a decision of the Wisconsin Tax Appeals Commission. The commission upheld a determination of the Department of Revenue that Nelson Brothers, an Illinois corporation carrying on a portion of its business in Wisconsin, had underpaid Wisconsin franchise taxes in the years 1974–78. For purposes of the tax, a corporation doing business in several states is required to allocate its total income to arrive at the amount attributable to Wisconsin.

The issues on the appeal are: (1) the appropriate scope of our review of the commission's decision where its inquiry was limited to whether the Department of Revenue abused its discretion in carrying out a specific statutory duty; (2) whether the department abused its discretion in directing a change in Nelson Brothers' accounting methods which led to increased Wisconsin

franchise tax liability; and (3) whether the change violated Nelson Brothers' right to due process of law.

The department cross-appeals from that portion of the judgment remanding the matter to the commission with directions to consider Nelson Brothers' argument that, should the assessment stand, it is entitled to an "equitable recoupment" in the form of an adjustment to the apportionment formula. We conclude that our review is limited to whether the commission's determination is arbitrary or unreasonable, and that the trial court properly disposed of all issues. We therefore affirm the judgment.

Nelson Brothers sells furniture at seven retail stores in Illinois and two in the Milwaukee, Wisconsin, area. For the years in question, as in preceding years, Nelson Brothers used the "separate accounting method" to compute its taxable income. As its name implies, the method treats the company's business in the taxing state separately from that in the home state. The gross income from business activities within the taxing state is determined, relevant deductions subtracted, and the remaining net income is attributed in its entirety to the taxing state.

The Department of Revenue, after an audit, determined that because Nelson Brothers' Wisconsin operations were an integral part of a "unitary" business, the separate accounting method failed to properly reflect taxable income for the years in question. The department recomputed the company's income using a different method—the "apportionment" or "formula" method—and ordered Nelson Brothers to use that method to calculate its Wisconsin income in the future.

Under the apportionment method, the company's business activities within the taxing state are considered to be an inseparable part of its total business, both

within and without the state. First, the company's total gross income from its entire business is determined. Allowable deductions are subtracted and the remaining net income is apportioned within and without the taxing state by means of a formula consisting of various factors—notably the company's property, payroll and sales—which are thought to be relevant in the production of income. The formula is set forth in Wis. Adm. Code, sec. Tax 2.39.

The change in accounting methods from separate accounting to apportionment resulted in increased tax liability for Nelson Brothers and the department assessed an underpayment for the years in question. The company petitioned the department for redetermination, and the petition was denied. Nelson Brothers appealed the assessment and the department's rulings to the commission. The commission concluded that the change was proper and denied Nelson Brothers' petition for redetermination.

Nelson Brothers also raised an "alternative" argument before the commission, contending that, should the assessment be affirmed, the company should be allowed an "equitable recoupment"—an offset against the newly-assessed liability representing an adjustment to the "sales factor" of the apportionment equation to reflect intangible income. The net effect of the adjustment would be to lower the tax due. Because Nelson Brothers had not raised the recoupment issue before the department, but argued it for the first time in its brief to the commission, the commission held that it lacked jurisdiction to consider it.

Nelson Brothers petitioned for judicial review and the circuit court affirmed the decision to change the company's accounting method, but remanded on the question of equitable recoupment, directing the commis-

sion to consider this issue on its merits. The appeal and cross-appeal followed.

## I. SCOPE OF REVIEW

There is a preliminary question involving the scope of review. In the usual case, our review of administrative decisions under ch. 227, Stats., is the same as that of the trial court, *Gilbert v. Medical Examining Board,* 119 Wis. 2d 168, 194, 349 N.W.2d 68, 79–80 (1984). We accept the agency's findings of fact if they are supported by substantial evidence in the record, *Wehr Steel Co. v. ILHR Dept.,* 106 Wis. 2d 111, 117, 315 N.W.2d 357, 361 (1982), and, generally, we decide the legal questions independently. *Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis. 2d 44, 48, 257 N.W.2d 855, 858 (1977). Where, however, the agency has particular competence or expertise in the matter at hand, we will sustain its legal conclusions as long as they are rational. *Wis. Power & Light v. Pub. Serv. Comm.,* 148 Wis. 2d 881, 887, 437 N.W.2d 888, 891 (Ct. App. 1989). Special deference to the agency may also be warranted where the agency's decision is "intertwined with value and policy determinations." *Transp. Dept. v. Transp. Com'r,* 135 Wis. 2d 195, 199, 400 N.W.2d 15, 16 (Ct. App. 1986).

In this case, however, the commission was not conducting its own *de novo* review of the department's decision, nor was it interpreting a statute—the type of agency action to which we generally defer. When the department ordered Nelson Brothers to adopt the apportionment method of accounting for its Wisconsin income, it was exercising a specific discretionary function delegated to it by sec. 71.07(2), Stats. (1985–86),[1]

---

[1] Although the statute now appears in modified form as sec.

and that exercise is what the commission was called upon to review.

Section 71.07(2), Stats. (1985–86), allows use of the separate accounting method to account for a multistate company's Wisconsin income in only two situations: (1) where the company's business is not "an integral part of a unitary business"; and (2) in any case where the department is satisfied that use of separate accounting will properly reflect the company's taxable Wisconsin income. The department and commission determined that Nelson Brothers' business is unitary, and the company has not challenged that determination on appeal. Thus, separate accounting is permissible only if it is established to the department's satisfaction that this method will properly reflect the portion of Nelson Brothers' income taxable in Wisconsin. And we agree with the parties that, under the statute, that determination is discretionary with the department.

---

71.25(6), Stats. (1987–88), we will continue to refer to the 1985–86 numbering. Section 71.07(2) provides that:

> Corporations . . . engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and properly located within the state. The amount of such income attributable to Wisconsin may be determined by an allocation and separate accounting thereof, when the business of such corporation . . . within the state is not an integral part of a unitary business, *but the department . . . may permit an allocation and separate accounting in any case in which it is satisfied that the use of such method will properly reflect the income taxable by this state.* [Emphasis added.]

The statute goes on to state that "[i]n all cases in which . . . separate accounting is *not* permissible, the determination shall be made [by using a specific apportionment formula]." (Emphasis added.)

As a result, the commission's review of the department's decision was confined to whether, on the facts as found by the commission, the department abused its discretion in ordering the change. And that frames the scope of our review: we look to the facts found by the commission, and the evidentiary basis for such findings; and then we consider whether, on those facts, the department exercised its discretion in a reasonable, non-arbitrary manner.

As we have said, in the usual case we accept the commission's factual findings if they are supported by substantial evidence in the record, and we give varying degrees of deference to the commission's legal conclusions if they relate to matters within the agency's particular expertise. This is not the usual case, however. We are dealing with a specific statute, sec. 71.07(2), Stats. (1985–86), which directs the department to exercise its discretion on a particular subject—whether to allow a multistate business to deviate from the statutorily prescribed accounting method for determining its Wisconsin income.

Given that statute, the commission, when reviewing the department's action, was not called upon to consider the evidence in order to make its own determination—its own choice—of the proper accounting method under sec. 71.07(2), Stats. (1985–86). Rather, the commission was determining whether the department abused the discretion expressly granted by the statute when *it* made the choice. As a result, we owe no deference to the commission's conclusions. While its factual findings are conclusive if supported by the evidence, the commission's determination of the reasonableness of the department's actions based on that evidence is not one

requiring application of any expertise or special compe-
tence in matters of taxation and tax policy. It is simply
the application of a legal standard—reasonableness—to
the found facts and is thus a question of law which we
decide independently.

## II. THE APPEAL

Nelson Brothers, challenging the department's
action, argues first that the department should be
"estopped" from requiring the change in accounting
because of its acceptance of past tax filings in which the
company used the separate accounting method. We agree
with Nelson Brothers' assertion that consistency in a
business's accounting methods is a relevant considera-
tion in such matters, and that the United States Tax
Court has so recognized in at least two cases interpreting
provisions of the Internal Revenue Code, *Klein Choco-
late Co.*, 32 T.C. 437 (1959), *supplemental opinion,* 36
T.C. 142 (1961), and *Geometric Stamping Co.,* 26 T.C.
301 (1956). We do not agree, however, that the fact that
the company has used separate accounting for several
years, and that the department accepted its
returns—sometimes after audit—during that period,
should forever bar the department from ordering a
change.

First, it is well-settled that administrative agencies
are not bound by *stare decisis*: "Consistency, of course,
is a virtue both in administrative and in judicial deter-
minations but inconsistencies in determinations arising
by comparison are not proof of arbitrariness or capri-
ciousness." *Robertson Transport. Co. v. Public Serv.
Comm.,* 39 Wis. 2d 653, 661, 159 N.W.2d 636, 640
(1968). Second, as we have noted, the statutes under

which the department operates dictate apportionment as the method of accounting for unitary businesses, with discretion delegated to the department to permit use of separate accounting only upon a showing that that method will properly reflect Wisconsin taxable income. We do not believe that acceptance of Nelson Brothers' returns in the past should be held to prohibit the department from exercising that discretion today.

We see Nelson Brothers' primary argument on the appeal as this: that the department abused its discretion in this case because its determination was unreasonable and arbitrary in that it lacks evidentiary support and, further, that the company's own evidence established that the separate accounting method "more clearly reflected Wisconsin income than the . . . apportionment method."

Nelson Brothers correctly points out that the department, in exercising its discretionary functions under sec. 71.07(2), Stats. (1985-86), must act reasonably—that the choice of accounting methods cannot be made arbitrarily or unreasonably, for the proper exercise of discretion requires that the department come to a reasoned, rather than an arbitrary, conclusion. *State ex rel. Clifton v. Young,* 133 Wis. 2d 193, 199, 394 N.W.2d 769, 772 (Ct. App. 1986).

An arbitrary or capricious decision is one that is either so unreasonable as to be without a rational basis, or one that is the result of an unconsidered, willful or irrational choice of conduct—a decision that has abandoned the "sifting and winnowing" process so essential to reasoned and reasonable decisionmaking. *Robertson Transport Co.,* 39 Wis. 2d at 661, 159 N.W.2d at 640;

*State ex rel. Irby v. Israel,* 100 Wis. 2d 411, 423, 302 N.W.2d 517, 524 (Ct. App. 1981).

The record satisfies us that the decision to require the change in Nelson Brothers' accounting methods was neither unconsidered nor irrational. It was a reasoned and reasonable decision and thus a proper exercise of discretion.

The commission's findings of fact establish the unitary nature of Nelson Brothers' business, and, as indicated, the company has not challenged this determination. The commission recognized that some of the company's day-to-day Wisconsin operations were in many respects autonomous from those of its Illinois stores, that the markets served in Illinois and Wisconsin were different and that the Illinois operations were "considerably more profitable on a separate accounting basis than those in Wisconsin." The commission also found, however, that Nelson Brothers' overall operations were both functionally integrated and centrally managed, which allowed it to achieve economies of scale through measures such as the sharing of headquarters expenses, centralized purchasing and pooling of corporate funds, among other items.

In an opinion accompanying its findings of fact, conclusions of law and order, the commission also discussed Nelson Brothers' failure to establish that its separate accounting methods properly reflected its Wisconsin income, stating that the company's evidence that separate accounting would show an actual loss in its Wisconsin operations was immaterial and, in any event, failed to show that that method properly reflected its income. The supreme court recognized in *Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 720, 281 N.W.2d 94, 105 (1979), *aff'd,* 447 U.S. 207 (1980), that a unitary taxpayer's showing of a loss under its accounting prac-

tices was immaterial to the question of whether the department's apportionment formula was valid.

Nelson Brothers' assertion that its evidence established that separate accounting accurately reflected its income is based on the following premises: (1) that the company "had historically kept its books and records on a separate accounting basis for many years"; (2) it "had historically filed its Wisconsin . . . returns on a separate accounting basis, with the [department's] knowledge and consent"; (3) "consistency [of accounting practices] over the years is a hallmark of clear reflection of income"; and (4) the highly autonomous nature of its Wisconsin operations "render separate accounting accurate and reliable as a measure of [its] Wisconsin income." We have discussed the first three points earlier in this opinion. As to the fourth, we have noted the commission's findings and conclusions regarding the integrated nature of Nelson Brothers' overall business activities and the resulting contributions to its income resulting from this "functional integration," including the economies of scale resulting from centralized management, purchasing and advertising functions, as well as sharing the expenses of the corporate headquarters and pooling of corporate funds—all of which are not recognized in a separate accounting system.[2]

The commission's factual findings are supported by substantial evidence. James Blinder, Nelson Brothers' president, acknowledged in his testimony that the company's corporate office in Chicago advanced funds to

---

[2]In *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 438 (1980), for example, the Supreme Court noted that "separate accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale."

Wisconsin stores for working capital, capital acquisitions and improvements, and also for the purchase of merchandise to be sold in Wisconsin stores. According to Blinder, eighty-five to ninety percent of all goods sold in Wisconsin were purchased through the main office and, when purchased, were warehoused in the company's Chicago storage facilities. In addition, Nelson Brothers' corporate advertising, accounting and mailing departments performed services for the Wisconsin stores, such as mail handling and distribution of advertising circulars—including printing and postage—handling accounts payable and carrying out other advertising and accounting functions.

There was conflicting testimony, to be sure. Among other things, Blinder testified that there were no economies of scale associated with the joint Illinois-Wisconsin activities, and the company's accountant stated his opinion that the separate accounting Nelson Brothers had been using accurately reflected its Wisconsin income, while the apportionment method would distort it.

[11]

When we assess an agency's factual findings, however, we do not weigh the evidence; that task is assigned solely to the agency. *Sanitary Transfer & Landfill, Inc. v. DNR,* 85 Wis. 2d 1, 14, 270 N.W.2d 144, 149–50 (1978). Indeed, the question on appeal is not whether the agency's determination is *against* the great weight of the evidence—it may be and still compel affirmance—the question is only whether there is substantial evidence in the record to support it. *Id.* at 14–15, 270 N.W.2d at 150.

We conclude that, on this record and in light of the directions in sec. 71.07(2), Stats. (1985–86), the department reasonably and properly exercised its discretion to

direct the change in Nelson Brothers' accounting practices.

Nelson Brothers also challenges the department's decision on constitutional grounds, arguing that the result is taxation of its Wisconsin income "out of all appropriate proportion" to the business it transacts in Wisconsin. The constitutional provision at issue is the due process clause, and it is well-settled that income generated by multistate corporations can be taxed by the individual states in conformity with due process requirements so long as there is a "minimal connection" between the intrastate activities and the taxing state and "a rational relationship between the income attributed to the State and the intrastate values of the enterprise." *Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 U.S. 207, 219–20 (1980), quoting *Mobil Oil,* 445 U.S. at 437. In *Container Corp. v. Franchise Tax Bd.,* 463 U.S. 159, 169–70 (1983), the Supreme Court held that while the constitution does not invalidate apportionment formulas whenever they may result in taxing some income that did not have its source in the taxing state, the application of a formula will be invalidated if the taxpayer can prove by clear and cogent evidence that the income attributed to the state is in fact out of all appropriate proportions to the business transacted in that state, or has led to a grossly distorted result. Finally, we note that "a company's internal accounting techniques are not binding on a State for tax purposes" for even recognized accounting principles may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale. *Exxon,* 447 U.S. at 221–22.

In *Exxon* the Court considered the application of sec. 71.07(2), Stats. (1967), to Exxon's Wisconsin-based

marketing operations and concluded that those operations were an integral part of a unitary business, justifying the department's use of apportionment, rather than separate accounting. There, as here, the separate accounting method resulted in the company's Wisconsin operations showing a net loss, while the apportionment method resulted in a net profit. *Exxon,* 447 U.S. at 227. Nonetheless, the Supreme Court concluded that "the necessary 'rational relationship' between the income attributed to the State by the apportionment formula and the intrastate value of the business" existed. *Id.* at 226–27.

Nelson Brothers bases a large part of its "gross distortion" argument on its assertion that, for a variety of reasons, its Illinois operations are more profitable than its Wisconsin operations.[3] The company maintains that the higher Illinois profits "shatter the premise on which the apportionment method is based" and establish that that method does not properly reflect its Wisconsin income.

The taxpayer in *Container Corp.,* like Nelson Brothers, argued that its foreign subsidiaries were much more profitable than the California parent corporation, and that it would thus be impermissible for the California authorities to apply an apportionment formula to determine its tax liability. Container Corporation contended, among other things, that while foreign and domestic productivity were equal, wages were much lower in the foreign countries, and, as a result, application of the apportionment formula greatly inflated the

---

[3]Prominent among those reasons, according to Nelson Brothers, is the fact that it could charge interest up to twenty-eight percent per year in its captive Chicago inner-city market where most sales are "very-high-risk financed sales," and that it was able to pay its Illinois salespeople lower commissions.

income apportionable to its California operations. The Supreme Court rejected the argument, stating:

> The problem with . . . this evidence, however, is that it does not by itself come close to impeaching the basic rationale behind the three-factor [apportionment] formula. Appellant and its foreign subsidiaries have been determined to be a unitary business. It therefore may well be that in addition to the foreign payroll going into the production of any given corrugated container by a foreign subsidiary, there is also California payroll, as well as other California factors, contributing—albeit more indirectly—to the same production. The mere fact that this possibility is not reflected in appellant's accounting does not disturb the underlying premises of the formula apportionment method. *Container Corp.,* 463 U.S. at 182.

We acknowledge the fact that application of the apportionment formula results in an increase of Wisconsin-allocated income—according to the department, an average 13.68 percent increase over the five-year audit period—and thus an increase in the company's Wisconsin tax liability. The department points out, however, that increases ranging from fourteen percent to forty-three percent have been upheld over similar objections in *Container Corp.,* 463 U.S. at 183–84, and *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 120–21 (1920). We are not persuaded that the increase in Nelson Brothers' tax liability renders the department's action unconstitutional.

## III. THE CROSS-APPEAL

The department's cross-appeal is limited to that portion of the trial court's judgment remanding the mat-

ter to the department with directions to resolve Nelson Brothers' claim that it was entitled to an equitable offset against the newly assessed tax liability. As we have said, the commission never reached the issue, believing that it lacked jurisdiction to consider the offset claim because Nelson Brothers had not argued it to the department in its petition for redetermination.

Under sec. 71.12(1), Stats. (1985–86), a taxpayer who believes that he or she is aggrieved by an assessment may petition the department for redetermination. Wisconsin Adm. Code, sec. Tax 3.91(1) provides that the petition for redetermination "shall set forth clearly and concisely the specific *grievances to the assessment* or to parts thereof, including a statement of the relevant facts and propositions of law upon which the grievance is based." (Emphasis added.) Thus, under sec. 73.01(5)(a), Stats., "[a]ny person . . . who has filed a petition for redetermination with the department . . . and who is aggrieved by the redetermination" may obtain review by the commission.

The commission's determination that it lacked jurisdiction to consider Nelson Brothers' claim for an equitable offset or "recoupment" was based on an earlier circuit court decision holding that the commission lacked jurisdiction to consider arguments not advanced by the taxpayer in its petition for redetermination before the department.

Under sec. 73.01(4)(a), Stats. (1985–86), the commission is "the final authority for the hearing and determination of all questions of law and fact arising under [the tax code]." The statutory procedures for appealing department decisions do not specify the contents of the appeal documents, and nothing in the statutes suggests that the review must be strictly confined to the claims

raised before the department. In addition, we are not convinced that Nelson Brothers' recoupment claim is a "grievance[ ] to the assessment," within the meaning of Wis. Adm. Code, sec. Tax 3.91(1). It is an equitable claim for an offset to the reassessment which is not barred from the commission's consideration by the taxpayer's failure to argue it to the department.

*By the Court.*—Judgment affirmed.